**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| William A. Harris, Sr., ) | Case No.: 6:06-CV-01808-GRA |
| *on behalf of himself* ) | |
| *and all others similarly situated*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| Experian Information Solutions Inc., ) | |
| ) | |
| Defendant. ) | |

| | |
|---|---|
| William A. Harris, Sr., ) | Case No.: 6:06-CV-01810-GRA |
| *on behalf of himself* ) | |
| *and all others similarly situated*, ) | |
| ) | |
| Plaintiffs, ) | |
| vs. ) | |
| ) | |
| Equifax Information Services LLC, ) | |
| ) | |
| Defendant. ) | |

| | |
|---|---|
| William A. Harris, Sr., ) | Case No.: 6:06-CV-01811-GRA |
| *on behalf of himself* ) | |
| *and all others similarly situated*, ) | |
| ) | |
| Plaintiffs, ) | |
| vs. ) | |
| ) | |
| TransUnion LLC, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING CLASS CERTIFICATION**

1.    **Introduction**

This matter comes before the Court on Plaintiff's amended motion for class certification in each of the above captioned related actions.   The Defendants oppose class certification.

These actions arise from the practice of the three major nationwide consumer reporting agencies – Equifax, Experian and TransUnion – of issuing consumer reports (credit reports) on Capital One credit card customers in which the credit limits for their Capital One revolving credit card accounts were not provided. This longstanding practice ended in October 2007 less than sixteen months after this litigation began, and approximately three months after this Court denied Equifax and Experian's motions for summary judgment.

The gravamen of these lawsuits is that the practice of not reporting Capital One credit limits had the impact or potential impact of unfairly depressing the credit scores of Capital One customers.  This resulted because most credit scoring models would substitute the historic high balance on a Capital One account for the missing credit limit, making it appear—falsely—that the Capital One customer was "maxed out" on the account, thereby depressing the consumer's credit scores.   The seriousness and overall impact of this problem are very much in dispute in this litigation.

In these lawsuits, the Named Plaintiff emphasizes the importance of credit scores in the modern consumer marketplace and alleges that each consumer reporting agency, by not reporting the Capital One credit limit data, violated Section

1681e(b) of the Fair Credit Reporting Act, which requires a consumer reporting agency to "follow reasonable procedures to assure maximum possible accuracy" of consumer reports.  In each action, the Named Plaintiff requests certification of two classes:  a nationwide class under Rule 23(b)(2) and a smaller, regional class under Rule 23(b)(3).  All members of the proposed regional class are also members of the proposed nationwide class.

Although the Court does not rule out the possibility of a nationwide Rule 23(b)(2) nationwide class, it declines to certify such a class at this time, primarily for three reasons.  First, although there is a lack of consensus among the parties about the exact size of the proposed nationwide classes, it is clear to the Court that each would number 20 million or more class members spread across the entire nation.  Management problems would be inherent with not one but three classes of such scope.  Second, because the Named Plaintiff seeks both injunctive and monetary relief on behalf of the nationwide classes, the Court is concerned about (i) whether class members should be given reasonable notice of the pendency of the class litigation, together with the right to opt out of it, and (ii) the associated expense of providing such notice. Third, as noted, following initiation of these lawsuits, Capital One and the Defendants have been reporting Capital One credit limits since October 2007 and have indicated they intend to continue to do so.  Thus, the primary injunctive relief that the Named Plaintiff seeks with a Rule 23(b)(2) class has in effect already been obtained as a result of these lawsuits.

Therefore, for the reasons that follow, the Court GRANTS class certification of the regional Rule 23(b)(3) class only.

## 2.    The Certified Classes and Class Claims

In each action, the Court certifies the following plaintiff class:

> All consumers with South Carolina, North Carolina, Virginia, West Virginia, and Maryland addresses about whom, according to [the Defendant's] records, [the Defendant] issued a consumer report on or after June 16, 2004, that contained at least one tradeline for an open Capital One credit card account. Specifically excluded from the class are (a) any consumer for whom a credit limit in excess of $0 was reported for all Capital One credit card tradelines in his consumer report, (b) any employees of [the Defendant], and (c) any consumer who prior to class certification has already commenced individual legal action against [the Defendant] or others for the conduct complained of in the Second Amended Complaint. [1]

In each action, the Court certifies the following alternative claims for class treatment:

- Under § 1681n, the claim that the Defendant willfully violated § 1681e(b) along with the remedies of statutory damages of $100.00, costs, and attorneys fees;

---

[1]  Classes with limited geographic scope are not uncommon. In recent FCRA cases, federal courts have certified several such classes. *See e.g.*, *In re TransUnion Corp. Privacy Litigation*, No. 00 C 4729, MDL 1350, 2005 WL 2007157 (N.D. Ill. Aug. 17, 2005) (class of Illinois consumers); *Bruce v. KeyBank NA*, No. 2:05-CV-330, 2006 WL 2334846 (N.D. Ind. Aug. 7, 2006) (class of persons with addresses in Lake or Porter Counties, Indiana); *Pavone v. Aegis Lending Corp.*, No. 05 C 5129, 2006 WL 2536632 (N.D. Ill. Aug. 31, 2006) (class of persons with Cook or DuPage County, Illinois addresses); *Cavin v. Home Loan Center, Inc.*, 236 F.R.D. 387 (N.D. Ill. 2006) (class of persons with Illinois addresses); *Murray v. New Cingular Wireless Services*, 232 F.R.D. 295 (N.D. Ill. 2005) (class of persons with Illinois addresses); *Bernal v. Keybank NA*, No. 06-C-8, 2007 WL 2050405 (E.D. Wis. July 11, 2007) (class of about 100,000 Wisconsin residents).

- Under § 1681o, the claim that the Defendant negligently violated § 1681e(b) along with the remedies of nominal damages of $1.00, costs, and attorneys fees.

**3.    Rule 23**

To be certified, a class action must meet the four requirements contained in Rule 23(a):  numerosity, commonality, typicality, and adequacy of representation. A putative class must also qualify under at least one of the categories set forth in Rule 23(b).  Here, the Named Plaintiff seeks certification under Rule 23(b)(3), which has two components:  predominance and superiority.

"A district court has broad discretion in deciding whether to certify a class." *Leinhart v. Dryvit Sys. Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (internal quotation marks omitted).  "[P]laintiffs bear the burden . . . of demonstrating satisfaction of the Rule 23 requirements and the district court is required to make findings on whether the plaintiffs carried their burden . . . ."  *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 370 (4th Cir. 2004).

**4.    Rule 23(a) Requirements**

**a.    Numerosity**

Numerosity requires that a class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  There is no mechanical test for determining whether the numerosity requirement for class certification has been satisfied.  *Kelley v. Norfolk and W. Ry. Co.*, 584 F.2d 34, 35 (4th Cir. 1978). Rather, the issue is one to be resolved in light of the facts and circumstances of

the particular case. *Id.* In this Circuit, class actions with as few as eighteen members have been found to satisfy the numerosity requirement. *Cypress v. Newport News Gen'l and Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967); *see also Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C. 1992), *aff'd,* 6 F.3d 177 (4th Cir. 1993).

The Named Plaintiff estimates each of the regional classes to number around two million members, while none of the Defendants has disputed numerosity. The Court finds that the proposed classes are sufficiently large to make joinder of all members impracticable; therefore, the numerosity requirement is satisfied.

### b.    Commonality and Typicality

Rule 23(a)'s commonality, typicality, and adequacy of representation requirements tend to merge and serve as "guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchen Prods, Inc. v. Windsor*, 521 U.S. 626 n.20 (1997). Commonality and typicality "ensure that only those plaintiffs . . . who can advance the same factual and legal arguments may be grouped together as a class." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir.1998) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir.1997)).

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A common question is one that can be resolved

for each class member in a single hearing." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006). "A claim is typical if it arises from the same course of conduct that gives rise to the claims of the class members and if the claims are based on the same legal theories." *Central Wesleyan,* 143 F.R.D. at 636.

As an initial matter, it is necessary to identify and understand the nature of the claims against the consumer reporting agencies and the Named Plaintiff's theory of the case to evaluate whether commonality and typicality exist as to the claims and theory. The controlling legal issues are governed by 15 U.S.C. § 1681e and the Fourth Circuit Court of Appeals' decision in *Dalton v. Capital Assoc. Ind., Inc.*, 257 F.3d 409 (4th Cir. 2001). A consumer reporting agency violates § 1681e(b) if (1) the consumer report contains inaccurate information; and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy. *Id.* at 415. "A report is inaccurate when it is 'patently incorrect' or when it is misleading in such a way and to such an extent that it can be expected to [have an] adverse effect" *Id*. (internal citations omitted). Defendants argue these elements raise issues that can only be decided on an individual basis. The Court disagrees. First, the Named Plaintiff and every class member share the common fact that the consumer reporting agency issued a consumer report about them containing a Capital One credit card account with no credit limit data. Second, the Named Plaintiff and the class members allege that these reports were a "patently incorrect" depiction of a revolving credit card account. Whether this

7

allegation is correct presents a common question that can be proven on a classwide basis by Named Plaintiff Harris.

All of the evidence indicates this allegedly inaccurate reporting of Capital One accounts was a standard practice or procedure applied to the Named Plaintiff and every class member.   Plaintiff Harris's theory is that (a) this practice or procedure was unreasonable and (b) a jury can determine its unreasonableness by examining alternative measures the reporting agencies could have employed to obtain the missing credit limit data and by considering the practice's overall adverse impact on the class.   The Defendants counter, however, that the reasonable procedures issue must be decided on an individual basis by examining the adverse effect on or benefit to each class member.

To determine where the focus should be on the reasonable procedures issue, the Court looks to the Fourth Circuit's *Dalton* decision. *Dalton*, 257 F.3d 409.   In *Dalton*, a job applicant sued a consumer reporting agency under the FCRA and state law for following inadequate procedures in reporting his criminal history to a prospective employer.   In vacating the district court's award of summary judgment to the reporting agency on plaintiff Dalton's FCRA claims, the Fourth Circuit stated:

> Specifically, Dalton has created a dispute of material fact as to whether CAI [the consumer reporting agency] followed unreasonable procedures by failing to instruct its subvendors on the proper sources of criminal history information.   CAI engaged SafeHands, which in turn engaged GRS.   After GRS discovered through its own computer search that Dalton had a criminal record in Jefferson County, Colorado, it called the clerk's office there.   The record suggests that GRS did not simply rely

8

on the clerk to read information from Dalton's case file or from the clerk's computer database. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994) (holding that reliance on actual court records constitutes a reasonable procedure). Instead, the inference is that the clerk read from the computer database that Dalton had been convicted of third degree assault, but then offered his or her own legal opinion that third degree assault is a felony under Colorado law. [CAI had no procedures governing the sources that a subvendor could rely upon in collecting information for a criminal background report.] A jury could properly conclude that it was an unreasonable procedure to rely on a clerk's informal opinion on the crucial question of whether a specific crime is a felony and that CAI should have had procedures in place to instruct its subvendors on the appropriate sources for reliable information about a person's criminal record. Accordingly, the district court erred in granting summary judgment in favor of CAI on the issue of whether it failed to follow reasonable procedures. (emphasis added)

*Id.* at 416-17. Accordingly, in examining the reasonable procedures issue, the *Dalton* court focused on what the consumer reporting agency did and did not do to assure the accuracy of its reporting. *Id.* The plaintiff was not the issue. *Id.* It is the same here.

The Court finds that a consumer is not required to show the adverse impact the reporting practice had on him. To the contrary, it is sufficient to show that the practice failed to comply with § 1681e(b)'s reasonable procedures requirement because *overall* it tended to have an adverse effect on consumer credit scores. Under such a theory, the focus is on the reporting agency and the overall aggregate

impact of its reporting practice  not *on a particular consumer*.  The Court concludes that this theory is provable on a classwide basis. [2]

The Named Plaintiff's claims are identical to the absent class members' claims.  The Named Plaintiff and the class members all were the subject of credit reports where no credit limit data was provided for Capital One accounts, and all allege that the defendants willfully or negligently violated § 1681e(b) by failing to provide the credit limit data.  If the Named Plaintiff proves his case, he proves the case for the class as well.  The Court finds that this satisfies both the commonality and typicality requirements of Rule 23(a).

**c.     Adequacy of Representation**

Rule 23(a)(4)'s adequacy of representation requirement is intended to "uncover conflicts of interest between the named parties and the class they seek to represent."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  The adequacy inquiry involves both the named plaintiff and counsel, but in these cases the Defendants challenge only Named Plaintiff Harris's adequacy, not that of his counsel.

Because the Named Plaintiff seeks statutory or nominal damages but does not seek actual damages, Defendants Experian and TransUnion argue that a conflict exists between him and the other class members over damages.  This argument is misplaced.  Rule 23(c)(2) allows members of a class action certified under Rule

---

[2]
  In opposing class certification, the consumer reporting agencies introduced "impact studies" to demonstrate the overall effect that the challenged reporting practice had on the credit scores of class members.  It follows that the Named Plaintiff can use similar evidence to prove an overall *negative* impact.  It would be up to the jury to decide whose impact studies were more credible.

23(b)(3) to opt out of the class, providing an option for those who wish to pursue individual actual damages claims on their own. As a result, the Named Plaintiff is not jeopardizing any actual damages claims, and no conflict exists between him and the absent class members over damages. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 432 (4th Cir. 2003).

In considering the adequacy requirement, some courts have found that a class representative would be inadequate based on concerns about his personal credibility. *See Savino v. Computer Credit, Inc.,* 164 F.3d 81, 87 (2d Cir. 1998). Indeed, at the class certification hearing, the Court did indicate some reservations about Named Plaintiff Harris's ability, or at least his ability proceeding alone, to represent the absent class members. Nonetheless, the Court is mindful that Rule 23(a)(4) requires only fair and adequate representation – not the best possible representation. *Byes v. Telecheck Recovery Servs.*, 173 F.R.D. 421, 428 (E.D. La. 1997). Additionally, the Court recognizes the paradox if, to protect class members against inadequate representation, the Court were to deny them any representation at all. *See Ross v. A.H. Robins Co., Inc.*, 100 F.R.D. 5 (S.D.N.Y. 1982).

Generally, character or credibility problems will not justify a finding of inadequacy unless related to issues in the litigation. *See German v. Federal Home Loan Mortgage Corp.*, 168 F.R.D. 145 (S.D.N.Y. 1996); *1 Newberg on Class Actions* § 3:34 (4th ed.). Here, the central issue is whether the Defendants'

reporting practices violated the FCRA.  To the extent Harris might suffer from infirmities, those would have no relation to the subject matter of these lawsuits. [3]

Considering that Named Plaintiff Harris's claims and the other class members' claims are not just closely related but identical, that no conflicts or antagonism exist between the interests of Named Plaintiff Harris and the other class members, the relatively limited scope of this litigation, the Named Plaintiff's experienced class action counsel, the vigorous prosecution of the litigation thus far, and the effect of disqualifying Harris, the Court cannot conclude that designating Harris as class representative would necessarily portend inadequate representation for the classes.  Based on the current record, the Court finds that the Named Plaintiff and Plaintiff's counsel are capable of fairly and adequately representing the interests of each class. [4]

The Court notes Named Plaintiff Harris has recently filed motions requesting that the Court allow one or more individuals to intervene as additional named plaintiffs for the purpose of serving as class representatives.  In view of the relatively large size of these classes, additional representation would be appropriate to bolster the adequacy of the class representation.  Accordingly, the Court,

---

[3] Courts have found individuals to be adequate class representatives despite questions about their backgrounds or personal qualities.  These include cases where the proposed class representative had a criminal record (*White v. E-Loan, Inc.*, 2006 WL 2411420 *3 (N.D. Cal. 2006); *In re Activision Sec. Lit.*, 621 F. Supp. 415, 429 (D.C. Cal. 1985)); had previously filed bankruptcy (*Wanty v. Messerli & Kramer, P.A.* (E.D. Wis. 2006); *In re Polis*, 217 F.3d. 899, 904 (7th Cir. 2000); *Wilborn v. Dun & Bradstreet Corp.*, 180 F.R.D. 347, 355-57 (N.D. Ill. 1998)); had lied on her bankruptcy petition in a previous bankruptcy proceeding (*Claffey v. River Oaks Hyundai, Inc.*, 238 F.R.D. 464, 467 (N.D. Ill. 2006)); and had failed to file tax returns (*Randle v. Spectran*, 129 F.R.D. 386 (D. Mass. 1988)).

[4] Under Rule 23(g), the Court is satisfied those seeking appointment as class counsel have identified the potential class claims, have experience in handling class actions and knowledge of the FCRA, and will commit the necessary resources to this matter.

pursuant to Rule 23(d)(1)(C), directs Harris to add one or more additional qualified class representatives in each action within a reasonable period of time.

In sum, Rule 23(a)'s numerosity, commonality, typicality and adequacy requirements are all met.

**5.     Rule 23(b)(3) Requirements**

Rule 23(b)(3) requires the district court to find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

Rule 23(b)(3) lists four specific non-exhaustive matters as pertinent to the predominance and superiority analysis:  (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (4) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23(b)(3).

The first and second factors support class certification because the absent class members have minimal or no interest in controlling the prosecution of individual actions.  Any likely individual recovery would be small, particularly when compared to the costs – substantial discovery, motion practice, expert testimony,

trial expenses – associated with prosecuting individual actions against large entities like these Defendants.  Further, although it is likely that over a million potential litigants exist, there has been minimal individual litigation over the missing Capital One credit limits issue (*see* Experian's Resps. to Pl.'s First Set of Interrogs. No. 3; Equifax's Resps. to Pl.'s First Set of Interrogs. No. 3; TransUnion's Resps. to Pl.'s First Set of Interrogs. No. 3), which strongly suggests few putative class members have sufficient amounts at stake to make individual lawsuits practical.  The dearth of individual cases filed and small potential individual recoveries support the conclusion that no great deal of interest exists in individual litigation.

The "litigation already commenced" factor would also appear to require that the Court consider whether any competing class actions are proceeding over the same subject.  As the Court is aware, the *Byerson* putative class action has been transferred to this District from the Eastern District of Virginia.  (*See* Order granting Motion to Transfer Venue (Dec. 20, 2006)).  Because that litigation is now in this District and managed by this Court, any concern regarding competing class actions over the same subject proceeding in different jurisdictions is negated.

The third factor is the desirability of concentrating the litigation in the specific forum.  This forum has been the center of this litigation for twenty-three months and is no less desirable than any other forum.  Moreover, with their successful effort to transfer the *Byerson* case to this Court, Experian and Equifax apparently believe that concentrating litigation of all claims in this District is

desirable.[5]  The Court agrees.  Consolidating claims from five states in one forum provides benefits, such as avoiding enormous redundancy of effort, which outweigh individual litigation.  *See Gunnells*, 348 F.3d at 426.  The desirability of the forum factor plainly weighs in favor of class certification.

The fourth factor pertinent to the Rule 23(b)(3) criteria is "the difficulties likely to be encountered in the management of a class action."  Fed. R. Civ. P. 23(b)(3)(D).  As discussed under the numerosity requirement, each class numbers approximately two million members.  While these classes are large, they would appear to be approximately the size of the three classes certified several years ago in the *Clark* FCRA class actions in this District.  *Clark v. Experian Information Solutions, Inc.,* No. CIV. A. 8:00-1217-24, CIV. A. 8:00-1218-24, CIV. A. 8:00-1219-24, 2002 WL 2005709 (D.S.C. June 26, 2002).  Those class actions did not prove to be unmanageable, and the Court sees no reason to believe these would prove to be.

The four specific matters listed in Rule 23(b)(3) all support a determination that the predominance and superiority requirements are met.

To satisfy the Rule 23(b)(3) predominance standard, the Named Plaintiff need only show that "common questions predominate over individual questions as to liability."  *See Gunnells*, 348 F.3d at 428.  As discussed under commonality and typicality, each defendant directed the same practice at every class member, and

---

[5]
 *See* Joint Motion to Transfer Venue to South Carolina by Equifax Information Services, LLC., Experian Information Solutions, Inc., *Byerson et al v. Equifax Information Services, LLC. et al*, E.D. Va., 3:06-cv-00582-REP.

its liability turns on three common questions that can be resolved on a classwide basis:

(1)     Was the Capital One account information accurate?

(2)     Were the Defendant's procedures reasonable?

(3)     Was the Defendant's conduct willful, negligent, or neither?

With respect to accuracy, the question common to all class members is whether a credit report which includes a Capital One tradeline, but omits the credit limit, is inaccurate under § 1681e(b) and *Dalton,* 257 F.3d at 415-16.  The Court finds that this question is identical for all class members.  If, as the Named Plaintiff maintains, a Capital One tradeline without a credit limit is "patently incorrect", *Dalton*, 257 F.3d at 415-16, it is not accurate under § 1681e(b) as to all class members.  Similarly, the question of whether each Defendant employed reasonable procedures to address the absence of Capital One credit limits is also identical for all class members.  For example, the Named Plaintiff has demonstrated that Defendants did not have any meaningful procedure by which a consumer could "self-report" his or her Capital One credit limit to the Defendants and thus fill in the missing credit limit on his or her credit report.  The question of whether the Defendants maintained a well-publicized, consumer-friendly self-reporting system – i.e., a reasonable procedure – is common across all members of the class. [6]  Finally,

---

[6]  It is undisputed the Defendant TransUnion did not have any "self-reporting" procedure until after this lawsuit was commenced.  Defendants Experian and Equifax contend that they did have some self-reporting procedure pre-litigation, but that contention is strongly disputed by the Named Plaintiff.  The Named Plaintiff asserts that even if some self-reporting procedure was in place at Experian and Equifax, it was not adequate.  In any event, the issue of the reasonableness of any procedure that Experian and Equifax may have had in place is a classwide issue to be determined

the issue of each Defendant's conduct is clearly a classwide question.  Whether each Defendant acted willfully or negligently is one that is the same for each class member.

Furthermore, damages can also be determined on a classwide basis.  If willful non-compliance with the FCRA is proven, the Named Plaintiff and each class member would be entitled to the minimum statutory damage amount of $100.[7]  If negligent non-compliance with the FCRA is proven, the Named Plaintiff and each class would be entitled to the requested nominal damages of $1.00.

The Court finds that the issues relating to both liability and damages are not only common to the proposed classes, but they predominate over any individual issues in these actions.

The superiority requirement ensures that resolution by class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of

---

by a jury under *Dalton*.  257 F.3d at 416-17.

[7] Two district courts in this Circuit have recently determined that a consumer who has proven that the defendant willfully failed to comply with the FCRA may recover statutory damages without proof of actual damages.  *See Saunders v. Equifax Information Services, L.L.C.*, 469 F. Supp. 2d 343, 348 (E.D. Va. 2007); *Williams v. Equifax Credit Information Services*, Civ. A. No. 4:07-00322-RBH, 2007 WL 4458914, *4 (D.S.C. Dec. 17, 2007).  Also, in a recent class action decision where the plaintiff asserted a § 1681e(b) claim, a federal court in California found that when a class seeks statutory damages, the district court is "not obligated to require individual proof of injury from each class member." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 385 (C.D. Cal. 2007).  Here, like the class in California, statutory damages are sought under § 1681n for willful non-compliance with the FCRA.  And, as with the class in California, no individual proof of injury from each class member is required.

Statutory damages are available where actual damages are minimal, difficult to prove, or non-existent.  Because no requirement exists for individual class members to prove actual damages from the reporting practice, the § 1681n claim and its statutory damages remedy can be pursued on a class basis.

decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc.*, 521 U.S. at 615. Certifying the regional class will achieve economies for both the litigants and the Court. A class action represents a more economical approach than potentially hundreds of thousands of individual lawsuits by consumers in five states.

A class action is also superior because absent a class action, many class members may be effectively foreclosed from pursuing their claims. As the Supreme Court declared in *Deposit Guaranty Nat'l Bank v. Roper*: "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device." 445 U.S. 326, 339, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980).

The Named Plaintiff proposed a *regional* Rule 23(b)(3) class to avoid the cost of providing individual notice to 20 million or more consumers if a *nationwide* Rule 23(b)(3) class were certified, which he and his counsel deemed cost prohibitive. The Defendants' chief argument against such a class is that it has the potential to lead to an undesirable result, namely, piecemeal resolution of a controversy nationwide in scope. The Court has been offered no authority, nor has it located any, requiring a named plaintiff to seek certification of the largest class possible. [8]

---

[8]

The Court notes several *statewide* FCRA class actions as well as one limited to certain counties have been certified even though nationwide classes would appear to have been a viable option. *See e.g.*, *In re TransUnion Corp. Privacy Litigation*, No. 00 C 4729, MDL 1350, 2005 WL 2007157 (N.D. Ill. Aug. 17, 2005) (class of Illinois consumers); *Bruce v. KeyBank NA*, No. 2:05-CV-330, 2006 WL 2334846 (N.D. Ind. Aug. 7, 2006) (class of persons with addresses in Lake or Porter Counties, Indiana); *Pavone v. Aegis Lending Corp.*, No. 05 C 5129, 2006 WL 2536632 (N.D. Ill. Aug. 31, 2006) (class of persons with Cook or DuPage County, Illinois addresses); *Cavin v. Home Loan Center, Inc.*, 236 F.R.D. 387 (N.D. Ill. 2006) (class of persons with Illinois addresses); *Murray v. New Cingular Wireless Services*, 232 F.R.D.

The Court also notes the Supreme Court has recognized that, ultimately, practical limits exist on the size of a Rule 23(b)(3) class. *See Califano v. Yamasaki*, 442 U.S. 682 (1979).  Most important, the plain wording of Rule 23(b)(3)'s superiority criteria requires that the Court, before denying class action status on superiority grounds, must identify an available alternative method or methods equal to or better than the proposed class action for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).  A consideration of the options follows.

(1)     **Certification of a nationwide class under Rule 23(b)(2).**    While certification of a nationwide 23(b)(2) class might offer a better alternative, the Defendants have vociferously petitioned the Court that such an option is unavailable because the FCRA precludes private injunctive relief for consumers.  For purposes of this Order only, the Court considers a Rule 23(b)(2) class unavailable as an option.

(2)     **Certification of a nationwide class under Rule 23(b)(3)**.  In the Court's view, certification of a nationwide 23(b)(3) class represents an impractical alternative.   Providing individual notice to such a class would be enormously expensive, and the Court is reasonably certain a class of 20 million or perhaps more would be outside the practical limits on the size of a Rule 23(b)(3) class that the Supreme Court has recognized. *Califano*, 442 U.S. at 702.

---

295 (N.D. Ill. 2005) (class of persons with Illinois addresses); *Bernal v. Keybank NA*, No. 06-C-8, 2007 WL 2050405 (E.D. Wis. July 11, 2007) (class of about 100,000 Wisconsin residents).

(3)  **Individual litigation.**  Very little individual litigation over this credit reporting practice has taken place to date.  *See* Experian's Resps. to Pl.'s First Set of Interrogs. No. 3; Equifax's Resps. to Pl.'s First Set of Interrogs. No. 3; TransUnion's Resps. to Pl.'s First Set of Interrogs. No. 3.  It stands to reason that very little, if any, can be anticipated in the future.  Individual litigation therefore represents an inferior option. [9]

(4)  **An FTC enforcement action.**  An enforcement action by the Federal Trade Commission would have merit because, among other reasons, the FTC would presumably deal with the matter on a nationwide basis.  No evidence has been presented, however, that an FTC action has been commenced or is forthcoming, so the Court does not consider the FTC alternative to represent a viable option, much less a comparable or superior one.  The Court also notes that the FCRA appears to rely for enforcement not on the FTC but largely on private attorney general actions by consumers, which is what Named Plaintiff Harris proposes.

(5)  **No adjudication of the controversy.**  The last alternative would be no adjudication of the controversy at all.  According to the Fourth Circuit, adjudication through a class action is superior to no adjudication of the matter at all.  *Gunnells*,

---

[9]  Despite the lack of individual litigation, the Defendants maintain that some class members possess or could possess lucrative individual damages claims for the alleged FCRA violation and that Named Plaintiff Harris's class certification plans would put those claims in jeopardy.  The Defendants' expressed concern for the interests of absent class members must yield to common sense.  "This is not a situation where claimants, waiting at the courthouse door to assert their [ ] rights, will be denied justice by class certification." *Kalish v. Karp & Kalamotousakis, LLP*, No. 06 Civ. 4933, 2007 WL 4048559, *3 (S.D.N.Y. Nov. 13, 2007).  In any event, Defendants' concerns for those class members with lucrative damages claims can be adequately addressed through notice and opt-out rights as provided in Rule 23(c)(2).

348 F.3d at 426.  As the Supreme Court has stated, "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617.

After considering the options, the Court finds that the class device provides the superior method for resolving the dispute between each credit reporting agency, on the one hand, and affected consumers in the five states, on the other. *Accord Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1163 (9th Cir. 2001) (quoting 7A Wright et al., *supra*, § 1779) ("If a comparative evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied.") (original alterations omitted).

Rule 23(b)(3)'s predominance and superiority requirements are both satisfied.

 **6.    Conclusion**

Because all of the prerequisites for class certification have been met under Rule 23(a) and Rule 23(b)(3), the Court orders the following in each action:

(1)    Certification of the regional class and the class claims described above;

(2)     The appointment of Named Plaintiff William A. Harris, Sr., as class representative;

(3)    The appointment under Rule 23(g) of Plaintiff's counsel as class counsel;

(4)     That pursuant to Rule 23(d)(1)(C) Class Representative Harris add one or more additional qualified class representatives within a reasonable period of time.

**IT IS SO ORDERED**.

_____

G. ROSS ANDERSON, JR.
UNITED STATES DISTRICT JUDGE

Anderson, South Carolina


May <u>29</u>, 2008